**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Herve Felix and Karla Jerabek, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiff,<br><br>              -v-<br><br>St. Catherine of Siena Medical Center and Catholic Health Services of Long Island,<br><br>                    Defendants. | 2:21-cv-03220<br>(NJC) (SIL) |

**FINAL JUDGMENT GRANTING:**
**(1) FINAL SETTLEMENT APPROVAL,**
**(2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES,**
**(3) APPROVAL OF SETTLEMENT CLAIMS ADMINISTRATOR'S**
**EXPENSES, AND (4) SERVICE AWARDS**

A.      Plaintiff Herve Felix ("Felix") commenced this action against Defendants St. Catherine of Siena Medical Center and Catholic Health Services of Long Island (collectively, "Defendants") on June 7, 2021, by service and filing of a Complaint on behalf of current and former hourly paid and non-exempt employees who worked at St. Catherine of Siena Hospital. Felix generally alleged that Defendants owed him and other members of the putative Classes unpaid straight and overtime compensation for: (a) improperly penalizing Plaintiff Felix and members of the Classes by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time members of the putative Classes are credited with performing work, as well as compensating members of the putative Classes based only upon their scheduled hours rather than the actual time they worked for Defendants; and (b) automatically deducting time for meal breaks when members of the putative Classes are performing work during that time.

B.      On November 22, 2022, Plaintiffs filed an Amended Complaint (the "Amended Complaint"), adding Plaintiff Karla Jerabek ("Jerabek") as a named plaintiff, including allegations that Plaintiff Jerabek, like Plaintiff Felix and the other members of the putative Classes, was denied compensation for all hours worked as a result of Defendants' practices and policies. Between September 23, 2022 and October 18, 2022, Rachael Massi ("Massi") and Christian Frisby ("Frisby") opted in to the action.

C.      On April 5, 2023, Plaintiffs filed a Second Amended Complaint, further supplementing the allegations in the Amended Complaint. On May 12, 2023, Defendants filed an Answer to Plaintiffs' Second Amended Complaint.

D.      The parties proceeded with discovery, with Defendants ultimately producing approximately 34,000 pages of documents. Thereafter, the parties proceeded with depositions, with Defendants deposing Felix, Jerabek, and Massi, and Plaintiffs deposing Ronald Musselwhite, St. Catherine of Siena Medical Center's Vice President of Human Resources, and Onorina Saporito, St. Catherine of Siena Medical Center's former Director of Human Resources.

E.      On or around December 7, 2022, Plaintiffs also served Defendants with Plaintiffs' Second Set of Interrogatories and Plaintiffs' Second Request for Production of Documents, resulting in additional documentary and written discovery.

F.      On December 16, 2022, Plaintiffs filed their motion for collective certification pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 43–45. In support, Plaintiffs submitted declarations from Felix, Jerabek, Frisby, and Massi, in addition to numerous time and payroll records and relevant deposition testimony. On February 3, 2023, Defendants opposed the motion, submitting a 36-page memorandum of law in opposition, as well as 34

exhibits. *See* ECF No. 48. Plaintiffs submitted a reply brief in further support of their motion on March 9, 2023. *See* ECF No. 50.

      G.      On August 14, 2023, the Court granted Plaintiffs' motion and conditionally certified a collective consisting of all current and former non-exempt employees who were employed by Defendants between December 16, 2019 and December 16, 2022, and directed that notice be distributed to the members of the conditionally certified collective to provide them an opportunity to opt-in to the action (the "Conditional Certification Decision"). *See* ECF No. 59.

      H.      After the Conditional Certification Decision, but prior to dissemination of the collective notice, Class Counsel and Defendants' counsel began exploring the possibility of settlement.

      I.      On or about January 12, 2024, the Parties agreed on the material terms of the settlement.

      J.      On March 11, 2024, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Settlement. *See* ECF No. 72. On August 13, 2024, the Court granted Plaintiffs' motion, preliminarily approved the Settlement, conditionally certified the proposed Class, appointed McLaughlin & Stern, LLP as Class Counsel, approved the proposed Notice, directed that the Notice be sent to members of both Classes, and set a date for the final fairness hearing (the "Preliminary Approval Order"). *See* ECF No. 86.

      K.      On October 24, 2024, Notice of the settlement was disseminated to members of both Classes via First Class Mail and email to those members for whom email addresses were available. Among other things, the Notice contained relevant information about the nature of the lawsuit, including how members of the Classes could exclude themselves from

the Settlement or object to the Settlement, as well as how the Individual Settlement Amounts will be calculated, attorneys' fees and expenses, and the proposed service award to Jerabek, Frisby, and Massi. As detailed in the Affirmation of Barry J. Peek dated January 6, 2025 ("Peek Affirmation") (ECF No. 88-2), approximately 99% of the Class Members received Notice of the settlement.

L.      The Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.* ("CAFA"), requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed with the court, each defendant that is participating in the proposed settlement . . . serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b).

M.      As detailed in the Peek Affirmation, on January 3, 2025, the Court-appointed Settlement Administrator served appropriate notices of the Settlement pursuant to CAFA.

N.      On January 6, 2025, Plaintiffs filed an unopposed motion for an Order granting final approval of the Settlement, which would, among other things: (i) certify the Classes for settlement purposes; (ii) approve the Settlement and Agreement as final, fair, reasonable, and adequate; and (iii) enter judgment in accordance with the Agreement ("Plaintiffs' Unopposed Motion for Final Approval of Settlement") (ECF No. 88). The same day, Plaintiffs filed an unopposed motion for an Order: (i) granting Class Counsel's application for attorneys' fees and reimbursement of expenses; and (2) granting service awards to Jerabek, Frisby, and Massi ("Plaintiffs' Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards," and together with Plaintiffs' Unopposed Motion for Final Approval of Settlement, "Plaintiffs' Unopposed Motions") (ECF No. 89).

O.      The Court held a final fairness hearing on Plaintiffs' Unopposed Motions on

4

January 21, 2025. As reflected in the Minute Entry dated January 22, 2025, during the final fairness hearing, the parties agreed to amend the text of paragraphs 1.27 and 1.28 of the Settlement Agreement to address the Court's concerns regarding the potential overbreadth of the proposed release of certain federal and state claims by Class Members. (Min. Entry, Jan. 21, 2025.) Additionally, because the CAFA notice was sent on January 3, 2025, the 90-day period for any objections to be filed by the federal or state officials would not expire until April 3, 2025. (*Id.*) Accordingly, the Court reserved judgment on Plaintiffs' Unopposed Motions pending the expiration of the CAFA objection period. (*Id.*)

P.      The CAFA objection period has expired. No objections were received from any state or federal officials. (Peek Aff. ¶ 4, ECF No. 94.)

NOW, THEREFORE, IT IS HEREBY ORDERED, upon consideration of the Agreement, the Parties' briefs, declarations, and oral arguments in support thereof, and the proceedings in this action to date, as follows:

1.      Except as otherwise specified herein, the Court for purposes of this Order adopts all defined terms set forth in the Agreement.

2.      This Court has jurisdiction over the subject matter of this action, all matters relating thereto, and all Parties.

3.      If, for any reason, the Effective Date does not occur, the Parties shall return to their respective positions in the Litigation as those positions existed immediately before the Parties executed the Agreement, and nothing stated in the Agreement or any other papers filed with this Court in connection with the Settlement shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in the Litigation or in any other action.

**A.     The Class Notice Satisfied the Requirements of Rule 23**

4.      The Notice disseminated to members of both Classes pursuant to the Preliminary
Approval Order constitutes the best notice practicable under the circumstances, was
accomplished in all material respects, and fully meets the requirements of Federal Rule 23.

5.      More specifically, the Notice was written in plain English and was organized and
formatted to be as clear as possible. The Notice described the terms of the Settlement, informed
members of both Classes about the process to opt out of the Settlement, informed them about the
process to object to the Settlement, informed them about the allocation of attorneys' fees and
costs, and provided specific information regarding the date, time, and place of the final approval
hearing.

6.      According to the Peek Affirmation, the number of Rule 23 Class Members who
received Notice Packets was 3,092 out of the final class list of 3,127. *See* ECF No. 88-2. In other
words, approximately 99% of Class Members received the Notice.

7.      Accordingly, the Notice constituted the best notice practicable under the
circumstances and meets the requirements of Federal Rule 23. *See, e.g., Gordon v. Vanda
Pharms. Inc.*, No. 19-cv-1108, 2022 WL 4296092, at *11 (E.D.N.Y. Sept. 15, 2022).

**B.     The Court Grants Final Certification of the Classes**

8.      Pursuant to Federal Rule 23 and the Fair Labor Standards Act § 216(b), the Court
grants final certification of: (1) the FLSA Class, consisting of current and former non-exempt
hourly paid employees who worked at St. Catherine of Siena Hospital during the period from
June 7, 2018 through the date of the Preliminary Approval Order; and (2) the Rule 23 Class,
consisting of current and former non-exempt hourly paid employees who worked at St. Catherine
of Siena Hospital during the period from June 7, 2015 through the date of the Preliminary

Approval Order (collectively, the "Classes").

9.       Specifically, under Federal Rule 23, a class action may be maintained if all the prongs of Rule 23(a), as well as one of the prongs of Rule 23(b), are met. *See* Fed. R. Civ. P. 23. Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Each of the foregoing requirements are met.

10.      First, numerosity is satisfied because the Rule 23 Class consists of 3,124 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (recognizing that numerosity is presumed when a proposed class consists of 40 or more member).

11.      Second, commonality is satisfied because Plaintiffs and Class Members all allege the same common contention that they were subject to an improper timekeeping policy that artificially reduced the amount of time working, including automatically deducting time spent working during meal breaks. These common factual and legal questions are sufficient to satisfy commonality under Federal Rule 23(a)(2). *See, e.g., Zhu v. Wanrong Trading Corp.*, No. 18-cv-417, 2024 WL 4351357, at *4 (E.D.N.Y. Sept. 30, 2024); *Montiel-Flores v. JVK Operations LTD*, No. 19-cv-3005, 2023 WL 5979209, at *8 (E.D.N.Y. Aug. 1, 2023).

12.      Third, typicality is satisfied because Plaintiffs and Class Members claim to have

suffered the same or similar injuries and rely on the same legal theories in seeking relief. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Zhu*, 2024 WL 4351357, at *4. Plaintiffs and members of both Classes worked for Defendants, allege the same injury— improper time rounding, unlawful automatic meal break deductions when employees worked during their uncompensated meal breaks, and unpaid off-the-clock work—and seek the same relief in the form of unpaid straight and overtime wages.

13.     Fourth, the adequacy requirement is satisfied because the Class Representatives do not have interests that are antagonistic to or at odds with the Class Members' interests and selected Class Counsel who are capable of adequately representing the Class's interests. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

14.     Finally, courts have held that common questions likely predominate in satisfaction of Rule 23(b)(3) when plaintiffs challenge the legality of the defendant's compensation-related policies and practices under the NYLL and will rely on common, class-wide proof, as Plaintiffs proposed to do here. *See, e.g., Perez v. Isabella Geriatric Ctr.*, No. 13-cv-7453, 2016 WL 5719802, *3 (S.D.N.Y. Sept. 30, 2016). Moreover, a class action is superior to other methods available for a fair and efficient adjudication of the controversy because the class device will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *See, e.g., Zhu*, 2024 WL 4351357, at *5; *Perez v. Allstate Ins. Co.*, No. 11-cv-1812, 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014).

15.     Accordingly, the Court finds that the Classes meet all of the requirements of Federal Rule 23(a) and (b)(3) and grants final certification of the Classes for settlement purposes only.

16.     Additionally, pursuant to 29 U.S.C. § 216(b), the Court grants final collective certification for settlement purposes, as Plaintiffs and members of the FLSA Class are sufficiently similarly situated to one another as they were all allegedly victims of a common policy or plan that purportedly violated the law, *i.e.*, Defendants' alleged failure to compensate them for all hours worked. *See* ECF No. 59.

## C.     The Court Grants Final Approval of the Settlement

17.     As set forth below, the Settlement is procedurally and substantively fair, reasonable, and adequate in all respects and, pursuant to Federal Rule 23(e), the Court grants final approval of the Settlement.

18.     As amended in 2018, Rule 23(e)(2) requires courts to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Prior to 2018, courts in the Second Circuit considered whether a proposed settlement was substantively fair by considering the factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). As the Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors, courts in this Circuit continue to evaluate proposed settlements utilizing the *Grinnell* factors in conjunction with Rule 23(e)(2).

19.     When looking to whether the agreement is procedurally fair, courts consider

whether the parties engaged in "arms-length negotiations between experienced, capable counsel after meaningful discovery." *See D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 WL 4838156, at *5 (E.D.N.Y. July 28, 2023). Here, the Settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had thoroughly evaluated the merits of Plaintiffs' claims. Indeed, the Parties engaged in more than sufficient discovery to explore the claims and defenses at issue in the case.

20.    Accordingly, the parties engaged in sufficient and meaningful discovery prior to negotiation and execution of the Settlement. In response to Plaintiff's First Combined Requests for Interrogatories and the Production of Documents, Defendants ultimately produced approximately 34,000 pages of documents. Defendants' production included relevant time and payroll records, emails, and documents setting forth Defendants' time and pay practices and policies. Thereafter, the Parties proceeded with depositions, with Defendants deposing Felix, Jerabek, and Massi, and Plaintiffs deposing Musselwhite, St. Catherine of Siena Medical Center's Vice President of Human Resources, and Saporito, the former Director of Human Resources at St. Catherine of Siena Medical Center.

21.    Additionally, the Class Representatives and Class Counsel adequately represented the Rule 23 Class. *See* Fed. R. Civ. P. 23(e)(2)(A). The Class Representatives' interests are adequately aligned with the members of the Classes, all of whom assert the same claims and seek the same relief. Moreover, Class Counsel, McLaughlin & Stern, LLP, is sufficiently experienced and qualified to represent the Classes, having been appointed as class counsel in similar wage-and-hour class actions. As such, the Settlement is procedurally fair.

22.    In *Grinnell*, the Second Circuit identified the following factors as relevant to the Court's evaluation of the substantive fairness of a class action settlement: (i) the complexity,

expense, and likely duration of the litigation; (ii) the reaction of the Class to the Settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) Defendants' ability to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. Each of these factors either weighs in favor of approval of the Settlement or is neutral. Further, the substantive fairness considerations under Rule 23(e)(2) largely overlap the *Grinnell* factors, but the additional consideration under the rule that class members be treated equitably relative to each other also weighs in favor of approval.

23.     First, the continuation of the litigation would have been complex, expensive, and lengthy. At the time the parties reached the Settlement, Defendants disputed the viability of Plaintiffs' claims and further discovery would have been required to establish liability and damages, including to support Plaintiffs' anticipated motion for class certification, and to respond to Defendants' opposition to such motion and Defendants' motion to decertify the collective action. This discovery would likely have included further electronic discovery, depositions of opt-in plaintiffs, and additional depositions of Defendants' employees. After completing discovery, Plaintiffs and Defendants would likely have moved for summary judgment. If the Court determined that fact disputes precluded summary judgment, a fact-intensive trial would have been necessary. Any judgment would likely have been appealed, further extending the litigation. This Settlement, on the other hand, provides significant relief to Rule 23 Class Members in a prompt and efficient manner. Therefore, this factor weighs in favor of approval. *See D'Angelo*, 2023 WL 4838156 at *5.

11

24.    Second, the reaction of the Classes has been very positive. Of the 3,127 possible members of the FLSA and Rule 23 Classes, only three opted out, and none have objected to the Settlement or Class Counsel's requested fee award.[1] "[T]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 302 (E.D.N.Y. 2015).

25.    Third, discovery has advanced far enough to allow the parties to *resolve* the case. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176–77 (S.D.N.Y. 2000). As discussed above, Class Counsel received and reviewed tens of thousands of pages of documents from Defendants. These documents included time and payroll records for members of the Classes, as well as voluminous emails between and among Defendants employees. After written discovery was exchanged, Class Counsel deposed two of Defendants' key witnesses, while Defendants deposed Jerabek, Felix, and Massi. Accordingly, the third Grinnell factor favors approval. *See id.* at 176.

26.    Fourth, and fifth, Plaintiffs would have faced substantial risks if the case proceeded. As discussed above, Plaintiffs faced risks as to both liability and damages if the case proceeded, including the risk that their motion for class certification would be denied or that Defendants' anticipated motion to decertify the collective action would be granted. Plaintiffs also faced the risk that Defendants' defenses, including their argument that members of both Classes were not actually performing work off-the-clock or during meal breaks, would be accepted,

---

[1] The three individuals who opted out are Deborah M. Reisine, Pamela Carrere, and William G. Edwards. Each of their requests for exclusion was submitted in connection with Plaintiffs' unopposed motion for final approval of the Settlement.  *See* ECF No. 88-2.

thereby posing additional risks to Plaintiffs and the Class. The Settlement alleviates these risks and therefore these factors favor approval. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486, 2012 WL 5305694, at *5 (E.D.N.Y. Oct. 4, 2012).

27.    Sixth, the risks of not maintaining the collective through trial and the risks of not obtaining class certification and maintaining it through trial are also present. Defendants made clear that after the completion of opt-in discovery, they intended to move for decertification of the collective on the basis that the collective members were not similarly situated to one another. Additionally, Defendants would likely contest any motion for class certification, which would necessitate extensive discovery and briefing. If the Court granted class certification and authorized notice to members of the Classes, Defendants would likely challenge that decision and seek to decertify the class action at a later date, requiring additional briefing and a possible application to the Second Circuit under Federal Rule 23(f). Additionally, Defendants would likely assert defenses for certain members of the Classes based on their particular factual circumstances. Accordingly, this factor likewise weighs in favor of final approval.

28.    Seventh, with respect to the ability of St. Catherine of Siena Medical Center, a not-for-profit entity, to withstand a greater judgment, that factor is neutral and does not preclude the Court from granting final approval.

29.    Finally, the Gross Settlement Amount of $2.7 million is substantial in light of the best possible recovery and the attendant risks of litigation. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178. "Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Ultimately, where a settlement provides "a meaningful benefit to the Class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Karic v. Major Auto Cos.*, No. 09-cv-5708, 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2017).

30.    Here, the Gross Settlement Amount of $2.75 million would yield a Net Settlement Amount of around $1,721,919 after the payment of attorney fees ($916,666.67), expenses ($31,414.76), service awards to Class Representatives ($40,000), and the claims administrator's fee ($45,000).

31.    The Net Settlement Amount is substantial given the value of the claims and the litigation risks. Class Counsel's estimates that if Plaintiffs were to succeed on all claims at trial, the best possible recovery in the Litigation ranged from approximately $6 million to $9.5 million considering, among other things: (1) the absence of sufficient time records that would allow for reliable estimates of the amount of time worked by all members of the Classes without compensation; (2) the broad discrepancies of off-the-clock estimates contained in employee declarations and testimony secured by counsel during discovery; (3) Defendants' position that no off-the-clock work was performed and no improper time rounding occurred, which would have yielded no recovery at all after trial; and (4) consultation with a damages expert in the wage and hour field.

32.    The Net Settlement Amount of around $1,721,919 is approximately 29% to 19% of the best possible recovery range of approximately $6 million to $9.5 million. Furthermore, Class Counsel estimates that after removing the off-the-clock damages—which are particularly difficult to prove and raise a number of potential individualized issues that could have precluded

14

class certification of these claims—the Net Settlement Amount constitutes around 57% of the best possible recovery of compensatory damages. Given the risks of further litigation discussed above, the settlement amount supports final approval. *See Cagan v. Anchor Sav. Bank FSB*, No. 88-cv-3024, 1990 WL 7342, *12 (E.D.N.Y. May 22, 1990) (approving a $2.3 million class settlement where the "best possible recovery would be approximately $121 million"); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (finding settlement fund reasonable when it amounted to 16.5% of maximum possible recovery); *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (finding a settlement fund reasonable that amounted to 40% of the maximum possible recovery).

33.     Rule 23(e) also requires the Court to consider whether the proposed Settlement treats members of the Classes equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(D). "As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (alteration in original). Here, the plan of allocation is fair, reasonable, and adequate because each participating class member will receive a pro rata share of the Settlement based on the number of weeks worked during the relevant period compared to the total amount of workweeks attributable to the entire class. The plan of allocation does not treat any member of either Class better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records. Accordingly, the plan of allocation is fair and reasonable. *See, e.g., Kohari v. MetLife Grp., Inc.*, No. 21-cv-6146, 2025 WL 100898, at *11 (S.D.N.Y. Jan. 15, 2025).

34.     Based on the foregoing, the Court finds that the Settlement is fair, reasonable, and

adequate in all respects and that it is binding on all members of the Classes.

35.     The Court has reviewed the Releases described in the Agreement, including the modified language in Sections 1.27 and 1.28 of the Agreement, and finds them to be fair, reasonable, and enforceable under the FLSA, Federal Rule 23, and all applicable law.

36.     In particular, on the record, the parties agreed to revise the releases contained in the Agreement as follows:

> Section 1.27: "Released Federal Law Claims" collectively means any and all federal law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by an FLSA Class Member that accrued against the Releasees from the beginning of the world up to and including the Effective Date, that arises out of the same factual predicate alleged in the litigation for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

> Section 1.28: "Release State Law Claims" collectively means any and all wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities under New York law against the Releasees of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by a Rule 23 Class Member that accrued against the Releasees from the beginning of the world up to and including the Effective Date, that arises out of the same factual predicate alleged in the litigation including without limitation claims under any legal theory (including but not limited to claims for breach of contract and/or terms and conditions of an applicable collective bargaining agreement) for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices (including but not limited to notices of pay rate and payday under Section 195.1 of the New York Labor Law), and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or derivative claims under ERISA, related tort, and/or violations of any other state or local statutory and common law.

*See* Transcript of Fairness Hearing conducted January 21, 2025 at 27–32.

37.    It is well-established that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct. *See Caccavale v. Hewlett-Packard Co.*, No. 20-cv-0974, 2024 WL 4250337, at *15 (E.D.N.Y. Mar. 13, 2024) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)). Here, as modified, the releases in Sections 1.27 and 1.28 of the Agreement are sufficiently limited to conduct arising out of the identical factual predicate as the settled conduct.

### D.    The Court Grants Class Counsel Attorneys' Fees Representing One-Third of the Gross Settlement Amount

38.    The Court hereby grants Class Counsel attorneys' fees of $916,666.67 or one-third of the Gross Settlement Amount, which the Court finds to be fair and reasonable.

39.    Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method—courts in this Circuit consistently prefer the percentage of the fund method in common fund wage and hour class action cases like this one. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015).

40.    In *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d. Cir. 2000), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50. Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

41.    First, Class Counsel expended significant time and labor prosecuting this action,

including: (i) drafting a comprehensive complaint, as well as the First Amended Complaint and Second Amended Complaint; (ii) drafting document demands, interrogatories, and requests for the production of electronically stored information ("ESI"); (iii) negotiating and litigating the production of time and payroll records and relevant ESI; (iv) reviewing tens of thousands of pages of responsive documents, including payroll records for members of the Classes; (v) deposing Defendants' key witnesses; (vi) defending the depositions of Felix, Jerabek, and Massi; (vii) successfully moving for collective certification pursuant to 29 U.S.C. § 216(b); (ix) consulting and interacting with a damages expert to develop a comprehensive damages model; (x) successfully negotiating the Settlement, and thereafter drafting the Agreement and the motions for preliminary and final approval of the Agreement; (xi) communicating with members of the Classes regarding the Agreement and their experiences working for Defendants; and (xii) communicating with the Claims Administrator regarding the Notices and a number of administration issues.

42.    In performing these tasks, as of the date of Plaintiffs' motion for attorneys' fees, Class Counsel expended over 876 hours of professional time for an aggregate lodestar of $549,487.20. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney, paralegal, and support staff participating in the case. Moreover, since Plaintiffs' motion for attorneys' fees, Class Counsel have expended an additional 43 hours of professional time (representing an additional $30,932.50 in lodestar), and anticipate spending additional time responding to Class Member inquiries regarding the Settlement and administering the distribution of the Settlement. *See Hanifin v. Accurate Inventory and Calculating Service, Inc.*, No. 11-cv-1510, 2014 WL 4352060, at *10 (N.D.N.Y. Aug. 20, 2014) ("In wage and hour cases, Class Counsel is often

18

called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with defendants about administering the settlement and distributing the fund."); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 WL 3119374, \*6 (S.D.N.Y. Aug. 6, 2010) ("because class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.").

43.    Second, the size and difficulty of the issues in this case support approval of the requested fees. This case involved a number of complex factual and legal issues that required significant briefing and legal analysis. Perhaps the most complex and contested issue in the case concerned the certifiability of Plaintiffs' claims. Throughout the litigation, Defendants maintained that Plaintiffs' claims were inappropriate for class treatment, arguing that individualized issues would predominate over common issues, including that members of the Classes performed their duties differently depending on their job title and responsibilities and where they worked, who supervised them, and other factors, which would have required individual mini-trials. By reaching the Settlement prior to dispositive motions or trial, Plaintiffs were able to avoid significant expense and delay, and instead ensure recovery for the members of the Classes.

44.    Third, the risks of litigation were significant and also favor approval of Class Counsel's fee application. Although Plaintiffs were successful in obtaining collective certification, Defendants made clear that after the completion of opt-in plaintiff discovery, they intended to move for decertification. Likewise, Defendants would have opposed Plaintiffs' anticipated motion for class certification under Rule 23, likely arguing that Rule 23 Class

Members performed their duties differently depending on where they worked, who supervised them, and other factors, and that these differences precluded class certification. There was undoubtedly a significant risk that Plaintiffs' motion would be denied or that Defendants' motion to decertify would be granted. If that were to have occurred, most Class Members would have lacked the incentive or wherewithal to pursue their claims on an individual basis, leaving them no recovery whatsoever. Assuming Plaintiffs prevailed on their class certification motion, both Plaintiffs and Defendants would have likely moved for summary judgment on the merits of their claims. If the Court were to determine that factual disputes precluded summary judgment, a fact-intensive trial would have been necessary. Any judgment would have likely been appealed, further extending the litigation. Had the case ultimately proceeded to trial, Plaintiffs may have been unable to prove all the necessary elements of their claims, including that Defendants' management knew or should have known that members of the Classes were performing work before and/or after the end of their scheduled shifts. Needless to say, had any of these issues been resolved in Defendants' favor, Plaintiffs' ability to secure meaningful relief for other members of the Classes would have been severely compromised.

45.    Fourth, the quality of the representation of Class Counsel favors approval of the requested fees. Class Counsel appropriately litigated this lawsuit from its commencement, including successfully moving for conditional certification, culminating in the Settlement. As discussed above, viewed in the context of the recovery achieved, the $2.75 million Gross Settlement Amount represents a significant portion of all Class Members' possible compensatory damages if they were successful on all their claims at trial. Class Counsel's experience in litigating class claims for enforcement of federal and state wage and hour laws also weighs in favor of approving their requested fee.

46.     Fifth, the one-third fee request is "reasonable and consistent with the norms of class litigation in this circuit." *Wu v. Maxphoto NY Corp.*, No. 15-cv-3050, 2016 WL 7131937, *3 (E.D.N.Y. Nov. 15, 2016) (citing *Garcia*, 2012 WL 5305694 at *8). In fact, this Court routinely grants requests of one-third of settlement funds in class actions such as this. *See Romero v. Sid Boys Corp.*, No. 18-cv-6583, 2024 WL 4871367, *4 (E.D.N.Y. Nov. 22, 2024); *D'Angelo*, 2023 WL 4838156, at *10–12; *Lai v. Journey Prepatory Sch., Inc.*, No. 19-cv-2970, 2022 WL 3327824, at *4 (E.D.N.Y. May 26, 2022).

47.     Moreover, the attorneys' fees sought are approximately 1.7 times the lodestar of Class Counsel, which is well within the range of reasonableness and in line with other awards of attorneys' fees in wage and hour class actions such as this. *See, e.g.*, *D'Angelo*, 2023 WL 4838156 at *12 (approving multiplier of 2.07); *see also Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-cv-3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

48.     Accordingly, Class Counsel attorneys' fees of $916,666.67 or one-third of the Gross Settlement Amount is fair and reasonable.

**E.      The Court Approves Class Counsel's Request for Reimbursement of Expenses**

49.     The Court hereby approves Class Counsel's request for reimbursement of $31,414.76 in litigation expenses, which expenses the Court finds were necessarily and reasonably incurred by Class Counsel in prosecuting this case.

50.     Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235,

239 (S.D.N.Y. 1993)); *see also Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 WL 2025106, *9 (E.D.N.Y. Jan. 20, 2010) ("[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses").

51.     Here, Class Counsel's unreimbursed expenses over the course of the litigation were necessary to prosecute Plaintiffs' claims. A substantial portion of the expenses (totaling $18,045.26) were associated with the expert fees of EmployStats. The deposition costs (totaling $9,242.25) were similarly substantial. These expenses, as well as the remainder of Class Counsel's expenses, were necessarily incurred expenses during the litigation. As such, Class Counsel's request for reimbursement of these expenses from the Gross Settlement Amount is approved. *See Zhu*, 2024 WL 4351357 at *53–54.

### F.    The Court Approves Arden's Fees

52.     The Court hereby approves and awards costs and fees to Arden Claims Services LLC in the amount of $45,000 to be paid from the Gross Settlement Amount in accordance with the Agreement and as set forth herein.

53.     Arden was appointed to administer the Settlement in accordance with the terms of the Agreement, including, among other things, disseminating notice of the Settlement to members of both Classes, answering questions from members of the Classes, and serving the CAFA notice on various state and federal officials. Arden will continue to fulfill its duties to facilitate the Settlement after entry of this Judgment, including calculating the allocated amount for each member of the Classes, and distributing the funds by mailing checks.

54.     The Court finds that the requested administration fee is reasonable in light of the tasks completed by Arden and the tasks to be completed in the distribution of funds to members of the Classes. *See Zhu*, 2024 WL 4351357 at *18.

### G.      The Court Approves the Requested Service Awards

55.      The Court hereby approves a service award of $20,000 for Jerabek, $10,000 for Massi, and $10,000 for Frisby, based upon the time, effort, and commitment they expended in prosecuting the case on behalf of the Classes.

56.      Courts acknowledge that service awards are common in class action cases. *See Toure v. Amerigroup*, No. 10-cv-5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012). Service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez*, 306 F.R.D. at 101. In assessing the reasonableness of service awards, courts consider the risks the class representatives assume in serving the interests of the class. *See Toure*, 2012 WL 3240461 at *6 ("[h]ere, the service awards recognize the risks that the named Plaintiffs and opt-ins faced by participating in a lawsuit against their current or former employer and the efforts they made on behalf of the class . . . .").

57.      Here, Jerabek, Frisby, and Massi were instrumental in the success of this case. After opting into the lawsuit, Jerabek joined as a named plaintiff, providing the details of her work experiences in connection with drafting the First Amended Complaint and Second Amended Complaint. Moreover, Jerabek assumed significant risk as a result of lending her name to the lawsuit, including the prospects of future employment. Additionally, Jerabek believed to possess additional claims against Defendants, which she agreed to forego to ensure she was an adequate representative of the Class.

58.      Jerabek, Frisby, and Massi were in constant communication with Class Counsel from the beginning of the case until its resolution, actively participated in discovery, and each of

them submitted declarations in support of Plaintiffs' motion for conditional certification. Additionally, Jerabek and Massi were deposed by Defendants. Their collective contributions to the litigation directly contributed to the successful resolution of the disputed claims.

59.      Accordingly, the requested service awards are reasonable and appropriate to compensate Jerabek, Frisby, and Massi for the work they performed and the risks they undertook in this litigation and helping achieve a successful resolution. *See Zhu*, 2024 WL 4351357 at *13 (approving service award of $20,000 for named plaintiff and $10,000 for opt-in plaintiffs); *Millker v. City of New York*, No. 21-cv-2616, 2024 WL 5183184, at *4 (S.D.N.Y. Dec. 19, 2024) (approving service awards of $20,000 to each of the class representatives); *Bekker v. Neuberger Berman Group 401k Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020) (approving service award of $20,000).

## H.      <u>Settlement Administration</u>

60.      The Effective Date of the Settlement shall be thirty (30) days after the execution of this Judgment with no notice of appeal or timely motion to extend the time to appeal having been filed.

61.      Upon the Effective Date, Defendants are to fund the Qualified Settlement Fund ("QSF").

62.      The attorneys' fees and expenses incurred by Class Counsel shall be paid from the QSF within one (1) business day after the Effective Date.

63.      Settlement Checks are to be mailed to Class Members by the Settlement Claims Administrator within thirty (30) days after the Effective Date. Class Members will have ninety (90) days from the date of mailing to cash their Settlement Checks (the "Acceptance Period").

64.      Within ninety (90) days after the end of the Acceptance Period, half the amount of

the uncashed Settlement Checks will be redistributed by the Settlement Claims Administrator to all Plaintiffs who properly cashed their checks during the Acceptance Period ("Paid Class Member"), provided that such amount is greater than Five Thousand and 00/100 Dollars ($5,000.00). If such amount is not greater than Five Thousand and 00/100 Dollars ($5,000.00), the entire amount of uncashed checks shall be placed in the Reserve Fund.

65.    The other half of the amount of the uncashed Settlement Checks shall be placed in the Reserve Fund. Any amount remaining in the Reserve Fund not distributed to Paid Class Members or used for defense costs after 180 days from the issuance of the Settlement Checks will be distributed to The Doe Fund, a non-profit organization that provides paid transitional work, housing, and educational opportunities to people with histories of homelessness, incarceration, and substance abuse. The Court finds that The Doe Fund is an appropriate *cy pres* organization as its mission is related to the purpose of the lawsuit. *See Caccavale*, 2024 WL 4250337, at *14 (citing *Reyes v. Buddha-Bar NYC*, No. 08-cv-2494, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010)).

66.    The Complaint filed in this Litigation and all claims contained therein are dismissed in their entirety with prejudice as to all members of the Classes and without attorneys' fees or costs, except as described herein.

67.    By operation of the entry of this Order and the Final Judgment, all Released Claims are fully, finally and forever released, relinquished and discharged pursuant to the terms of the release set forth in Sections 1.27 and 1.28 (as modified) and Section 4.1(A) and (C) of the Agreement as to all members of the Classes other than those who have opted-out of the Settlement.

68.    The Parties entered into the Agreement solely for the purpose of compromising

and settling disputed claims. Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and the Classes, individually or collectively, all such liability being expressly denied by Defendants.

69.    This Final Judgment is a final judgment in the Litigation as to all claims among the Plaintiffs, members of the Classes who have not opted out, and Defendants. The Court finds, for purposes of Federal Rule 54(b), that there is no just reason for delay and expressly directs entry of Judgment as set forth herein.

70.    The Court retains jurisdiction over this matter for purposes of resolving issues relating to administration, implementation, and enforcement of the Agreement.

        IT IS SO ORDERED.

Dated:  Central Islip, New York
        April 25, 2025

                                         _/s/ Nusrat J. Choudhury_____
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge

26